*UP2827*

# United States District Court Eastern District of New York

05-CV-2490
(Dearie, D.J.)

ABIDALI HAJI,

*Petitioner,*

*against*

DAVID MILLER, Superintendent of Eastern
Correctional Facility,

*Respondent.*

## AFFIDAVIT AND MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR A WRIT OF *HABEAS CORPUS*

RICHARD A. BROWN
District Attorney
Queens County
*Attorney for Respondent*
125-01 Queens Boulevard
Kew Gardens, New York  11415
(718) 286-5928

JOHN M. CASTELLANO
USHIR PANDIT
  Assistant District Attorneys
    *Of Counsel*

NOVEMBER 8, 2007

# TABLE OF CONTENTS

Page No.

AFFIDAVIT IN OPPOSITION TO PETITION FOR A
WRIT OF *HABEAS CORPUS* .................................. 1

Factual and Legal Background ................................ 2
The Current Petition ........................................ 10

MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR
A WRIT OF HABEAS CORPUS .............................. 12

POINT ONE

PETITIONER'S DOUBLE JEOPARDY AND
INEFFECTIVE-ASSISTANCE-OF-TRIAL-COUNSEL
CLAIMS ARE PROCEDURALLY BARRED FROM
REVIEW IN THIS COURT ............................ 12

POINT TWO

PETITIONER CANNOT SHOW THAT THE STATE
COURT'S DETERMINATION THAT HE RECEIVED
THE EFFECTIVE ASSISTANCE OF COUNSEL WAS
CONTRARY TO, OR AN UNREASONABLE
APPLICATION OF, ESTABLISHED SUPREME
COURT LAW ....................................... 25

POINT THREE

SINCE PETITIONER HAS NOT ESTABLISHED
THAT THE STATE COURT'S DETERMINATION
THAT HE RECEIVED THE EFFECTIVE
ASSISTANCE OF APPELLATE COUNSEL WAS
CONTRARY TO, OR AN UNREASONABLE
APPLICATION OF, CLEARLY ESTABLISHED
SUPREME COURT PRECEDENT, HE IS NOT
ENTITLED TO HABEAS RELIEF ON THIS BASIS ........ 37

CONCLUSION ............................................ 43

UNITED STATES DISTRICT COURT             UP 2827
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

ABIDALI HAJI,                                  :

                       Petitioner,        :     AFFIDAVIT IN
                                             OPPOSITION TO
     -against-                    :     PETITION FOR
                                               A WRIT OF
DAVID MILLER, Superintendent of       :     *HABEAS CORPU*S
Eastern Correctional Facility,

                                       :

                                     05-CV-2490 (RJD)

                                     :

                     Respondents.

-------------------------------------------------------------------x

STATE OF NEW YORK   )
                       )    ss.
COUNTY OF QUEENS  )

      USHIR PANDIT, an Assistant District Attorney in the County of Queens and an attorney admitted to practice law in this Court, being duly sworn, deposes and states as follows:

      1.    I am submitting this affidavit and memorandum of law in opposition to the May 23, 2005, application of petitioner Abidali Haji for a writ of *habeas corpus*. I make the statements in this affidavit on information and belief, based upon my review of the records and files of the Queens County District Attorney's Office.

      2.    By agreement with the Attorney General of the State of New York, the District Attorney of Queens County will represent respondent in this matter.

3.      Pursuant to this Court's Order to Show Cause, copies of the following documents will be forward to the Court with the curtsey copy of the response: (a) the Appellate Division Briefs; (b) petitioner's application for leave to the New York Court of Appeals; (c) the state's response to petitioner's application for leave to the Court of Appeals; and (d) the Court of Appeals' denial of petitioner's leave application; (e) petitioner's motion pursuant to section 440.10 of the New York Criminal Procedure Law; (f) the state's opposition to petitioner's section 440.10 motion; (g) the court's denial of petitioner's section 440.10 motion; (h) petitioner's application for leave to appeal to the Appellate Division from the court's denial of his section 440.10 motion; (i) the state's opposition to petitioner's leave application; (j) the Appellate Division's denial of petitioner's leave application; (k) petitioner's application for a writ of error *coram nobis*; (l) the Appellate Division's decision denying petitioner's application.[1]

## Factual and Legal Background

4.      On January 2, 1997, at about 2:35 p.m., petitioner and his accomplice sold seventy grams of heroin to Undercover Detective Bryant in exchange for seven thousand dollars.  Thereafter, petitioner had numerous conversations with the undercover detective regarding the future sale of heroin.  Specifically, petitioner

---

[1]The trial transcript for petitioner's state trial are not included here because a complete copy of the transcripts were provided to the Court with the state's response to the co-defendant's petition.  The co-defendant Rashid Khan's petition is current pending before this Court under CV 06-2717.

2

told the undercover detective that the petitioners' supply of heroin was finished and that they would get a new shipment soon.  Additionally, conversations intercepted under an eavesdropping warrant established that petitioner and his accomplice were conspiring to transport a large quantity of heroin from Pakistan.  Petitioner and his accomplice were unsuccessful, however, because petitioner's accomplice was arrested and his supply confiscated in Pakistan.  On July 16, 1997, petitioner was arrested.

5.      Thereafter, petitioner was indicted for two counts of Conspiracy in the Second Degree (N.Y. Penal Law § 105.15); Criminal Sale of Controlled Substance in the First Degree (N.Y. Penal Law § 220.43 [1]); Criminal Possession of Controlled Substance in the Second Degree (N.Y. Penal Law § 220.18 [1]); two counts of Criminal Sale of Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39 [1]); two counts of Criminal Possession of Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16 [1]); and Money Laundering in the First Degree (N.Y. Penal Law § 470.15 [2]) (Queens County Indictment Number 3254/97).

6.      Petitioner then proceeded to a jury trial in Supreme Court Queens County.  At the conclusion of the trial, the jury convicted petitioner of two counts of Conspiracy in the Second Degree, one count of Criminal Sale of Controlled Substance in the First Degree, and one count of Criminal Possession of Controlled Substance in the Second Degree.

3

7.     On November 28, 2000, petitioner was sentenced to a indeterminate term of imprisonment of from six to eighteen years for the second-degree conspiracy count, to an indeterminate term of imprisonment of from five to fifteen years for the second-degree conspiracy count, to an indeterminate term of imprisonment of from sixteen years to life for the first-degree sale count, to a indeterminate term of imprisonment from five years to life for the second-degree possession count, to a determinate term of imprisonment of one year for the second-degree use of a drug paraphernalia count, and to a determinate term of imprisonment of one year for the seventh-degree drug possession count.  The sentences for the first second-degree conspiracy count, the first-degree sale count, and the second-degree possession counts were imposed concurrently to each other, but consecutively to the second-degree conspiracy count under the second count of the indictment.

8.     In June 2002, petitioner filed a direct appeal to the Appellate Division, Second Department.  Petitioner, represented by counsel, claimed that: (1) the eavesdropping evidence should have been suppressed because the affidavits in support of the eavesdropping warrants failed to establish that conventional investigative methods would not have been successful; (2) the trial court violated the mandates of section 270.35 of the New York Criminal Procedure Law when it permitted the court's law secretary to speak to an absent juror regarding that juror's incapacity; and (3) his sentence was excessive.

4

9.     On August 23, 2002, the state filed a respondent's brief.  The state argued that petitioner's claims regarding the eavesdropping evidence and the trial court's purported violation of the mandates of section 270.35 of the Criminal Procedure Law were unpreserved and meritless.  The state also argued that the trial court properly exercised its discretion in imposing the sentence, which was not unduly harsh or excessive.

10.     In January 2003, petitioner filed a *pro se* supplemental brief.  In that brief, petitioner claimed that: (1) the admission of a taped conversation between the deceased confidential informant and the co-defendant violated his right to confront the witnesses against him; (2) it was error to admit the same taped conversation because it was inaudible; and (3) the state's failure to obtain and turn over any of the Alcohol, Tobacco, and Firearm Bureau's (ATF) file regarding the compensation received by the confidential informant constituted a *Brady* violation.

11.     On March 26, 2003, the state filed a response to petitioner's *pro se* supplemental brief and argued that petitioner's first claim was unpreserved and meritless because the state laid a proper foundation for the admission of the taped conversation.  The state also argued that petitioner's second claim was without merit because the court properly determined that the recording was audible and its admission did not result in the jury's speculating about its content.  Finally, the state argued that all information relating to the compensation received by the confidential

5

informant for his involvement in petitioner's case had been disclosed to petitioner and there was no evidence that any exculpatory material was contained within the ATF's files.

12.     On December 1, 2003, the Appellate Division, Second Department affirmed petitioner's judgment of conviction. *People v. Haji*, 2 A.D.3d 457 (2d Dept. 2003).  The court held that the eavesdropping warrants were properly issued because the People's application established probable cause.  The court further held that the trial court did not improperly delegate its obligations when a sworn juror became unavailable and was replaced by an alternate.  Finally, the court held that defendant's sentence was not excessive.  *Id.* at 458.

13.     On January 13, 2004, petitioner sought leave to appeal the court's decision and order to the Court of Appeals.  On February 25, 2004, the Court of Appeals denied petitioner's leave application.  *People v. Haji*, 1 N.Y.3d 628 (2004).

14.     On May 28, 2005, the state received petitioner's *habeas corpus* petition, filed in the United States District Court, Eastern District of New York.  On June 1, 2005, the state received petitioner's petition to the Appellate Division for a writ of error *coram nobis*, and, also on June 1, 2005, the state received petitioner's motion to vacate his judgment pursuant to section 440.10 of the New York Criminal Procedure Law.

6

15.     In July 2005, petitioner submitted letters to the respective courts where the above matters were pending, requesting that these matters be held in abeyance.  This Court granted petitioner's application.

16.     On August 1, 2005, petitioner filed a motion for re-sentencing pursuant to section 70.71 of the Penal Law – The Drug Reform Law Act (DRLA). On September 12, 2005, the state filed a response to petitioner's motion for re-sentencing.

17.     On October 11, 2005, the Appellate Division denied petitioner's petition for a writ of error *coram nobis*.  *People v. Haji*, 22 A.D.3d 599 (2d Dept. 2005).[2]

18.     On December 5, 2005, petitioner sought leave to appeal to the Court of Appeals from the Appellate Division's October 11, 2005, decision and order.

19.     On December 15, 2005, the Supreme Court, Queens County, granted petitioner's motion for re-sentencing pursuant to section 70.71 of the New York Penal Law.  The court re-sentenced petitioner to a term of nine and one-half years for the first-degree criminal sale of a controlled substance count, and a term of five years for the second-degree possession of a controlled substance count. The court also ordered that all sentences run consecutively to the sentence of six to eighteen years imposed for the second-degree conspiracy count that defendant was serving

_____

[2]The Appellate Division rendered its decision without a response by the People.

7

pursuant to the court's original sentence on November 28, 2000, just as they originally had run consecutively.  Finally, the court ordered post-release supervision for a period of five years.

20.    On January 11, 2006, the Court of Appeals denied petitioner's application for leave to appeal the Appellate Division's October 11, 2005, order denying his *coram nobis* petition.  *People v. Haji*, 6 N.Y.3d 776 (2006).

21.    On May 23, 2005, petitioner moved to vacate his judgment of conviction pursuant to section 440.10 of the New York Criminal Procedure Law. Petitioner claimed that his double jeopardy rights were violated when he was prosecuted for two conspiracy counts that constituted "the same offense." Petitioner further claimed that he was denied the effective assistance of counsel when his counsel failed to raise a double-jeopardy claim in the trial court and failed to advise petitioner that he could testify as to some of the charges against him and remain silent as to others or move to sever the January 2nd sale count from the conspiracy count covering the period of January 2 to July 16th.

22.    On March 9, 2006, the state filed an affirmation and a memorandum of law in opposition to petitioner's motion.  The state argued that petitioner's motion should be denied because his claims were subject to a mandatory procedural bar as they were  on-the-record claims.

8

23.     On May 4, 2006, the trial court denied petitioner's motion.  The court held that petitioner's double jeopardy claims – that he was unfairly prosecuted and convicted of two separate conspiracy offenses and that his counsel rendered ineffective assistance for failing to raise that claim – were subject to mandatory procedural bar pursuant to section 440.10(2)(c) of the New York Criminal Procedure Law, as they were on-the-record claims.  The court also held that, were it to review the merits of petitioner's claims, it would nevertheless deny petitioner's motion because petitioner's double-jeopardy rights were not violated.  The court also held that petitioner's ineffective-assistance-of-counsel claim based on counsel's failure to move for severance and separate trials for the two conspiracies, so that petitioner could testify as to one of the charges, was not inapposite to a reasonable and legitimate trial strategy.  Indeed, the trial court held that, even under the unlikely scenario where separate trials were held because the court granted a severance, any cross-examination of petitioner as to his testimony relating to the first conspiracy and sale count would have also included questions regarding the second conspiracy count. The court held that petitioner's testimony about the first incident would have exposed him to questions regarding his overall involvement with the co-defendant, the informant, and the undercover officer.  The court stated that, it its opinion, under the circumstances described above, petitioner would have been seen in a more "unfavorable light" because he would have chosen to "cherry-pick" his testimony and

9

that he would have appeared "devious and deceitful" to the jury.  The court further held that evidence of the second conspiracy could also have been introduced during the state's direct case pursuant to a proper *Molineux* application to establish petitioner's "intent" and "common scheme or plan" between petitioner and the co-defendant Khan.  Finally, the court held that petitioner had failed to establish that he was prejudiced by counsel's failure to advise him or move for a severance of the two conspiracy counts.

24.     On November 2, 2006, petitioner moved to appeal the trial court's decision to the Appellate Division.

25.     On November 17, 2006, the state filed an affirmation in opposition to petitioner's leave application. On June 28, 2007, the Appellate Division denied petitioner's application for leave.

## The Current Petition

26.     On May 23, 2005, petitioner filed the instant petition.  Petitioner raises claims previously raised by him in his section 440.10 motion, and his application for a writ of error *coram nobis*.  Specifically, petitioner claims that his prosecution under two separate conspiracy counts, for which he received consecutive sentences, resulted in his being punished twice for the same offense and violated the double jeopardy clause.  Petitioner also claims that his trial counsel and his appellate counsel rendered ineffective assistance for their failure to raise this claim at trial or

10

on appeal.  Petitioner further claims that his trial counsel was ineffective for failing to advise petitioner that he could testify as to some of the offenses and not the others and to move for a severance of the offenses in order for petitioner to testify as to the January 2nd offenses and not as to the remaining offenses on the indictment.

27.     But, as explained in the accompanying Memorandum of Law, the petition should be dismissed because petitioner's claims are procedurally barred.  In any event, all of petitioner's claims are without merit, and any error is harmless.

28.     Petitioner is currently incarcerated on the conviction from which he is seeking habeas corpus relief.

WHEREFORE, and for the reasons set forth in the accompanying Memorandum of Law, the petition for a writ of habeas corpus should be dismissed.

_____
USHIR PANDIT (2827)
Assistant District Attorney
(718) 286-5928

Sworn to before me this
___ day of November 8, 2007


_____
    Notary Public


To:   Glenn Garber, P.C.
      350 Broadway, suite 1207
      New York, N.Y. 10013

11

UNITED STATES DISTRICT COURT                    UP 2827
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ABIDALI HAJI,                                   :

                              Petitioner,       :

      -against-                                 :       MEMORANDUM
                                                        OF LAW
                                                :
DAVID MILLER, Superintendent of                 :
Eastern Correctional Facility,                  :
                                                :       05-CV-2490 (RJD)

                              Respondents.      :
                                                :
                                                :
-------------------------------------------------------------------x

This Memorandum of Law, together with the accompanying Affidavit,

is submitted in opposition to petitioner's petition for a writ of habeas corpus.

## POINT ONE

### PETITIONER'S DOUBLE JEOPARDY AND INEFFECTIVE-ASSISTANCE-OF-TRIAL-COUNSEL CLAIMS ARE PROCEDURALLY BARRED FROM REVIEW IN THIS COURT (Responding to Ground One of the Petition).

As he did in his state motion to vacate his judgment of conviction,

petitioner contends in this Court that his double jeopardy rights were violated when

he was prosecuted for two conspiracy counts that constituted "the same offense."

Petitioner further contends that he was denied the effective assistance of counsel

when his counsel failed to raise a double-jeopardy claim in the trial court.  But relying

12

on state procedural rules, the trial court rejected these claims because they related to matters that appeared on the record and could have been raised on direct appeal, but petitioner unjustifiably failed to raise them.   Because the trial court rejected petitioner's claims on state procedural grounds, rather than on the merits, they are now barred from review by this Court.   And because petitioner cannot show both cause and resulting prejudice for his procedural default, or, alternatively, that there would be a fundamental miscarriage of justice should the Court not review these claims, he is not entitled to a review of them in this Court.

An application for a writ of *habeas corpus* shall not be granted unless the petitioner has exhausted the remedies available in the state courts.   28 U.S.C. § 2254(b)(1).   To exhaust a claim in state court, a petitioner must have fairly presented the same claim to the highest state court from which a decision can be had.   *See* 28 U.S.C. § 2254(b)(c).   Indeed, to satisfy the exhaustion requirement, the petitioner must have first given the state courts a full and fair opportunity to review the merits of the federal constitutional claim.   *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Daye v. Attorney General*, 696 F.2d 186, 190 n.3 (2d Cir. 1982 (en banc), *cert. denied* 464 U.S. 1084 (1984); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971) ("once [a] federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied").

And in order to allow states the first opportunity to correct their own mistakes, federal courts generally may not entertain claims of constitutional violations that have been procedurally barred from review in the state courts because the petitioner did not raise the claim in the correct forum. *See Reed v. Ross*, 468 U.S. 1, 11 (1984) (failure to comply with rules requiring issues to be raised on direct appeal, as opposed to post-conviction collateral review, constitutes procedural default); *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985) (claim not fairly presented to state court when petitioner utilized the wrong procedural vehicle and thereby deprived state court of fair opportunity to pass on merits of claim). Indeed, a state court's reliance on a state procedural ground as a basis for rejecting a claimed violation of a state prisoner's constitutional rights constitutes an "adequate and independent state ground" that generally precludes federal *habeas* review. *Harris v. Reed*, 489 U.S. 255, 261-62 (1989). In *Harris v. Reed*, the Supreme Court held that this procedural bar is applicable only in cases in which the state court decision contains a "plain statement" that the state court is relying, at least in part, on the applicable state procedural rule in deciding the claim. *Id.* at 263-65. Here, although petitioner raised a violation of his double jeopardy rights and ineffective assistance of counsel claims, he did not do so in a manner sufficient to satisfy these concerns.

After his appeal was denied, petitioner brought a motion in the state trial court, pursuant to section 440.10 of the New York Criminal Procedure Law, seeking

to vacate his judgment of conviction in which he alleged, for the first time, that his double jeopardy rights had been violated and that he had received the ineffective assistance of counsel.[3]  In considering these claims, the trial court denied them, relying expressly on the mandatory procedural bar of section 440.10(2)(c) of the New York Criminal Procedural Law that provides that a court must deny a motion to vacate a judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure . . . to raise such a ground or issue upon appeal actually perfected by him."

Specifically, addressing petitioner's claim of a violation of his double jeopardy rights and his claim that his trial counsel was ineffective because he failed raise this issue, the court held that petitioner's claims were procedurally barred from review pursuant to section 440.10(2)(c) (*See* Trial Court's May 4, 2006, Decision and Order).

Thus, the court's decisions contain a plain statement that it was rejecting these claims because of petitioner's failure to comply with New York's procedural

---

[2]Petitioner's ineffective-assistance-of-counsel claim alleged two errors by trial counsel.  The state court reached and rejected, on the merits, petitioner's ineffective-assistance-of-counsel claim based on counsel's failure to advise petitioner that he had the option to testify as to some of the offenses and counsel's failure to move for a severance of those counts from the indictment.  Accordingly, this claim is addressed below, in Point Two.

rules. Moreover, petitioner now has no state-court forum in which to raise these claims as he has already taken the one direct appeal to which he is entitled. *See Teague v. Lane*, 489 U.S. 288 (1989); *Reyes v. Keane*, 118 F.3d 136, 139-40 (2d Cir. 1997); *Grey v. Hoke*, 933 F.2d 117 (2d Cir. 1991). These claims, therefore, are barred from review in this Court by an adequate and independent state procedural bar. *See Aparicio v. Artuz*, 269 F.3d 78, 92-93 (2d Cir. 2001) (claim that should have been raised on direct appeal was procedurally barred from review in 440 motion, and that bar was an adequate and independent state ground barring review in federal court).

Nor does the Appellate Division's subsequent decision summarily rejecting petitioner's application for leave to appeal the 440 court's decision mean that that court considered the merits of petitioner's claims. When faced with a silent rejection of a claim in the state court, the *habeas* court must "look through" that decision to the "last reasoned opinion" issued in the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993). If "the last reasoned opinion on the claim explicitly imposes a procedural default, [then a *habeas* court] will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Ylst v. Nunnemaker*, 501 U.S. at 803. Thus, here, because the 440 court rejected on procedural grounds petitioner's double jeopardy and ineffective-assistance-of-counsel claims, and in the prosecution's response to petitioner's motion for leave to appeal, the prosecution specifically argued

16

that the trial court correctly denied petitioner's claims because they were procedurally barred (*see* State's November 17, 2006 Affirmation), there is no reason to doubt that the Appellate Division relied on the procedural bar to reject petitioner's application with regard to these claims.[4]

If a claim has been procedurally defaulted in state court, a federal court may address its merits only if the petitioner can show both cause for the procedural default and that he will be prejudiced by non-review of the claim or – alternatively – that a fundamental miscarriage of justice will occur if the court does not review the claim. *See Murray v. Carrier*, 477 U.S. 478, 485, 492 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994).

The existence of cause for a petitioner's procedural default will ordinarily turn on whether the petitioner can show that some objective factor external to the defense impeded counsel's efforts to comply with a state's procedural rules. "'[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials" made compliance impracticable, would constitute cause under this standard.'" *Amadeo v. Zant*, 486 U.S. 214, 222

---

[3]Petitioner does not argue that the state court's rejection of these claims on procedural grounds was erroneous. Rather, petitioner concedes that the double jeopardy claim was not properly raised by trial counsel despite the "obviousness" of the claim. Petitioner further concedes that the claim is procedurally bared as the basis for this claim was "laid out on the record," but appellate counsel nevertheless failed to raise the claim on appeal (Petition at 12-13). The procedural bar, in this case, therefore, is "adequate" to preclude federal review of this claim. *Cotto v. Herbert*, 331 F.3d 217 (2d Cir. 2003).

(1988), quoting *Murray v. Carrier*, 477 U.S. at 488.  *See Strickler v. Greene*, 527 U.S. 263 (1999).

Constitutionally ineffective assistance of counsel can also constitute cause but only if an independent Sixth Amendment claim has been previously submitted to the state courts.  *See Edwards v. Carpenter*, 529 U.S. 446 (2000); *Murray v. Carrier*, 477 U.S. at 488.  The ineffective-assistance-of-counsel claim must be exhausted like any other federal constitutional claim, even if the claim is being raised only to establish "cause" to excuse a procedural default on an unrelated constitutional claim.  *Murray v. Carrier*, 477 U.S. at 488-491.  Further, if the ineffective-assistance-of-counsel claim is procedurally defaulted, it can constitute cause only if petitioner shows cause for and resulting prejudice from non-review of that claim.  *Edwards v. Carpenter*, 529 U.S. at 453.

Next, as noted above, even if cause for the default is established, a petitioner must also make a prejudice showing in order to overcome a procedural default.  *See Murray v. Carrier*, 477 U.S. at 485, 492.  The Supreme Court has suggested that prejudice is established by showing that, but for the default, there is a reasonable probability that the outcome of the relevant proceeding would have been different.  *See Strickler v. Greene*, 527 U.S. at 289-96; *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (a petitioner must show not merely that the errors created a "possibility of prejudice, but that they worked to his actual and substantial

18

disadvantage, infecting his entire trial with error of constitutional dimensions"). It stands to reason, therefore, that a petitioner cannot establish prejudice when the constitutional claim alleged is without merit. *Capiello v. Hoke*, 698 F. Supp. 1042 (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir. 1988).

Here, petitioner alleges that he has established cause for the procedural default for his above claims because he exhausted a claim of ineffective-assistance-of-appellate-counsel in state court (Petitioner's Memorandum of Law at 14). But this contention cannot succeed because petitioner received the effective assistance of appellate counsel, *see* Point Three, below, he, therefore, cannot rely on such a basis as cause for his claims.

In any event, petitioner could never show that he would be prejudiced should the Court not review his ineffective assistance of trial counsel claim due to counsel's failure to argue that petitioner's double jeopardy rights were violated. Here, petitioner's claim that his double jeopardy rights were violated is without merit.

Indeed, the application of the *Korfant* inquiry to the two conspiracy counts does not result in a double jeopardy violation. First, although the two conspiracy offenses are charged under the same statute, this similarity is of limited significance because the two conspiracy counts are distinct. *See United States v. Macchia*, 35 F.3d 662, 671 (2d Cir. 1994); *United States v. Chiattello*, 804 F.2d 415, 419 (7th Cir. 1986)(the fact that the same statutory offense is charged in both

conspiracy indictments "is far from sufficient to establish the existence of one conspiracy").  In this case, although the indictment charged petitioner with the two conspiracy counts, the two conspiracies were independent of each other; the success or failure of neither was dependent on the other.  Indeed, two conspiracy counts are not interdependent for the purpose of individuating them for a Double Jeopardy claim where the success or failure of one conspiracy is independent of the success or failure of the other.  *United States v. Korfant*, 771 F.2d at 663.

Here, the first conspiracy for the completed sale of heroin is completely independent of the success or failure of the second charged conspiracy to procure additional heroin.  The sale had already been completed before co-defendant Khan made the first overt act– to procure additional heroin – in making an offer to sell more heroin to the undercover.  Petitioner and the co-defendant's success or failure in procuring more heroin could not effect the first conspiracy, which was complete and finalized before the second conspiracy arose.  Similarly, the success or failure of the second conspiracy was independent of the sale because even if petitioner and the co-defendant had failed in selling the heroin to the undercover on January 2, 1997, the second conspiracy could have still become operational.  Indeed, independent of the sale to the undercover, petitioner and his accomplice could have engaged in the second conspiracy to procure heroin for sale to other customers in Queens.  In fact, even if the sale to the undercover had failed, for instance, because of disagreement

20

over price or quality, petitioner and his accomplice could have still made the proposal to procure more heroin for another sale on more agreeable terms. Therefore, while the success of the first conspiracy helped in easing the way into the second conspiracy, the second conspiracy was in fact "functionally independent" from the first conspiracy. *Id.* at 663.

Second, although petitioner and his accomplice were the only participants in the charged conspiracies, each had a different role in the two conspiracies. While the co-defendant led contact with the undercover buyer in the first conspiracy, petitioner was the lead contact person in the second conspiracy. The record shows that petitioner played a background role in the first conspiracy; in the second, he conducted all major communication with the undercover and his accomplice had no contact with the undercover. Thus, because the overlapping participants played different roles in the two conspiracies, this factor weighs in favor of distinguishing the two conspiracies. *United States v. Macchia*, 35 F.3d 662, 670 (2d Cir. 1994) (different roles of overlapping participants in the two conspiracies weighed in favor of finding that the conspiracies were distinct).

Third, contrary to petitioner's claim, the prosecutor did not arbitrarily divide the overt acts (Petitioner's Memorandum of Law at 10-11). Rather, the first conspiracy was based on a number of overt acts of which the completion of the sale of heroin on January 2nd was the culminating act. The first overt act of the second

21

conspiracy, the co-defendant giving his number for future contact with the undercover, was distinct and followed completion of all the acts for the first conspiracy.  There is a clear end to the overt acts for the first conspiracy and a distinct and clear beginning of overt acts for the second conspiracy.  Indeed, here, although the statutory offenses are the same, and there is some overlap in time, place, and participants, these similarities are outweighed by the differences in these factors and by the fact that the two conspiracy counts alleged different overt acts.  *United States v. Korfant*, 771 F.2d at 662.

Moreover, contrary to petitioner's claim, the Double Jeopardy Clause's prohibitions against the imposition of multiple punishments for the same offense is also not implicated here because the two conspiracy counts were not the same offense (Petitioner's Memorandum of Law at 12).  In *Blockberger v. United States*, 284 U.S. 299, 304 (1932), the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two separate offenses or only one, is whether each provision requires proof of a fact that the other does not."

Here, the two conspiracy counts were independent of each other and required the state to establish different facts or overt acts to prove the offenses.  The first conspiracy count in the indictment related to the sale of heroin on January 2, 1997, and it was completed when petitioner and the co-defendant exchanged the

22

heroin for money with the undercover officer.  The second conspiracy – which was to procure more heroin for sale – began after all the overt acts for the first conspiracy count were completed.  Thus, the second conspiracy began with the overt act of petitioner giving his phone number to the undercover officer for future narcotics sales.  Accordingly, the two conspiracy counts were not the same offense.  *United States v. Reiter*, 848 F.2d 336 (2d Cir.  1988) (the two conspiracy counts that defendant was charged with were distinct even though there was "some overlay in time, place, and participants, the similarities are outweighed by the differences in these factors and by the fact that the two indictments allege different overt acts").  Therefore, because petitioner's double jeopardy claim is meritless, petitioner cannot show that he would suffer any prejudice should the Court not review the merits of the claim.  For the same reasons, petitioner fails to establish that he was prejudiced by his trial counsel's failure to raise this meritless claim before the trial court.

Nor would there be a fundamental miscarriage of justice should the Court not review petitioner's claims.  The Supreme Court has held that the "miscarriage of justice" exception extends to cases of "actual innocence," that is, when the constitutional violation "has probably resulted in the conviction of one who is actually innocent [of the offense of which he has been convicted]."  *Murray v. Carrier*, 477 U.S. at 496; *see Schlup v. Delo*, 513 U.S. 298 (1995).  "To be credible," an actual innocence claim requires a petitioner to present "new reliable evidence –

23

whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324.   Here, petitioner has not provided the Court with any new evidence to substantiate an actual innocence claim.  He, therefore, cannot rely on the miscarriage-of-justice exception to obtain *habeas* review of his procedurally-barred claims.

In sum, petitioner's claims – that his double jeopardy rights were violated and that his trial counsel was ineffective because he failed to argue that petitioner's double jeopardy rights were violated –  are barred from review in this Court by an independent and adequate state procedural ground.   Indeed, when petitioner raised these claims in a section 440.10 motion, the state trial court rejected them on the basis that petitioner should have included them in his direct appeal. Because the state court relied on an adequate and independent state ground in denying these claims, they are procedurally barred from review.  Moreover, petitioner has not established cause for his procedural default and that he would be prejudiced should the Court not review the merits of the claims.  Nor, alternatively, has he shown that a fundamental miscarriage of justice would ensue should the Court decline to review the claims on the merits.  Accordingly, this Court should reject the claims.

## POINT TWO

**PETITIONER CANNOT SHOW THAT THE STATE COURT'S DETERMINATION THAT HE RECEIVED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WAS CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, ESTABLISHED SUPREME COURT LAW (Answering the Petition, Point II).**

In a motion pursuant to section 440.10 of the New York Criminal Procedure Law, petitioner claimed that his trial counsel had been ineffective because he failed to advise petitioner that he had the option to testify as to the January 2nd offenses and not the remaining offenses and to move for a severance of the January 2nd offenses from the others. As to these contentions, however, the 440 court held that counsel provided effective representation. This decision is entitled to deference in this Court. As a result, the writ can only issue if petitioner shows that the state court's decision was contrary to, or an unreasonable application of, established Supreme Court law. Petitioner, however, has not made such a showing and he, therefore, is not entitled to issuance of the writ on this basis.

Under 28 U.S.C. § 2254 (d), a state prisoner's habeas corpus petition "shall not be granted with respect to any claim that was adjudicated on the merits" in state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established" Supreme Court law. 28 U.C. § 2254(d)(1). This standard requires deference to state-court determinations on the law

25

and is different from the previous de novo standard because even an incorrect determination must be upheld if it is reasonable. *Williams v. Taylor*, 529 U.S. at 410.

A state court adjudicates a federal claim on the merits when it disposes of the claim "on the merits," and reduces its disposition to judgment. *Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001). In making this determination, a federal reviewing court should examine 1) the state court's opinion; 2) whether the state court was aware of any procedural bar to review on the merits; and 3) the practice of the state courts under similar circumstances. *Jimenez v. Walker*, 458 F.3d 130 (2d Cir. 2006). Under this test, a claim may be adjudicated on the merits "even if the state court [opinion] does not explicitly refer to either the federal claim or to relevant federal case law." *See Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001). *Accord, Norde v. Keane*, 294 F.3d 401 (2d Cir. 2002); *Eze v. Senkowski*, 321 F.3d 110 (2d Cir. 2003). When the state court is determined to have adjudicated the claim on the merits, a federal habeas court must defer to the state court's decision in the manner prescribed in 28 U.S.C. § 2254(d)(1).

In *Williams v. Taylor*, 261 F.3d 303, 309 (2d Cir. 2001), the Supreme Court delineated an analytical framework to guide review of habeas claims, identifying the need to treat independently the "contrary to," and the "unreasonable application of," clauses of section 2254 (d) (1). And the Second Circuit, in determining whether a state-court decision is unreasonable, has held that to be

26

unreasonable, "[s]ome increment of incorrectness beyond error is required." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). The Second Circuit has also held that, in order to determine whether a state court has reasonably applied clearly established Supreme Court law, it is appropriate to examine how other federal courts of appeals have analyzed the issue to be decided in order to see the factors those courts have considered relevant in making such a determination. *Cruz v. Miller*, 255 F.3d 77 (2d Cir. 2001). And in analyzing the particular issue in *Cruz*, the Second Circuit held that, regardless of what that Court might hold if analyzing the claim de novo, the Court was only to decide if, under the circumstances, the state court's determination was "reasonable" and should not "grad[e] their papers." *Id*. at 87.

In this case, because the trial court adjudicated the merits of the ineffectiveness contentions, other than those that were procedurally barred, its decision as to these contentions is entitled to deference in this Court. And because petitioner cannot show that the state court's decision was contrary to, or an unreasonable application of, established Supreme Court precedent, the writ should not issue.

Initially, the 440 court's decision rejecting petitioner's ineffectiveness contentions other than the ones that were procedurally barred constitutes an adjudication on the merits. In its decision dated May 4, 2006, the 440 court stated that petitioner received the effective assistance of counsel (*See* Trial Court's May 4, 2006,

27

Decision and Order at 6).  The court further stated that counsel's failure to move for a severance was "not inopposite to a reasonable and legitimate trial strategy under the circumstances" (*See* Trial Court's May 4, 2006, Decision and Order at 6).  The court further held that petitioner had failed to establish that he was prejudiced by counsel's failure to move for a severance.  The court stated that even if severance had been granted and petitioner had testified as to the January 2nd offenses, it was likely that the jury would have viewed his testimony unfavorably because petitioner would have been cross-examined as to the events beyond the January 2nd counts and would have appeared to the jury to "cherry-pick" his testimony (*See* Trial Court's May 4, 2006, Decision and Order at 7-8).  This plainly shows that the 440 court decided petitioner's above ineffectiveness contentions on the merits and did not dispose of them on procedural grounds.  Its decisions, therefore, are entitled to section 2254's deferential standard of review.

    And applying that deferential standard of review to this case, the 440 court's determination cannot be said to have resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law.  Petitioner's ineffective-assistance-of counsel claim is squarely governed by *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Williams v. Taylor*, 529 U.S. at 390.  To establish a claim of ineffective assistance of counsel under *Strickland*, a defendant must show that counsel supplied deficient representation and that the defendant

suffered prejudice as a result of that deficient representation.  Unless a defendant can show that there was no "legitimate reason" to pursue a particular strategy, counsel must be presumed to have rendered adequate assistance.  *Strickland v. Washington*, 466 U.S. at 690.  Indeed, counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 688; *United States v. Cronic*, 466 U.S. 648, 658 (1984).  A reviewing court should make every effort "to eliminate the distorting effects of hindsight" in assessing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland v. Washington*, 466 U.S. at 689. And "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . ." *Id.* at 690.  To rebut the strong presumption, a defendant must show not only that counsel's performance fell below "an objective standard of reasonableness under prevailing professional norms," but also that counsel's deficient performance actually prejudiced the defendant.  *Id.* at 687-688.

Moreover, under 2254 (d)'s analysis, a petitioner must show that the state court failed to apply the correct legal standard or that the state court applied *Strickland* to the facts of the case in an objectively unreasonable manner.  "He must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance."  *Bell v. Cone*, 535 U.S. 685 (2002).  "[I]t is the

29

habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19 (2002).

Here, the state court's application of *Strickland*'s principles was not objectively unreasonable. Indeed, here, petitioner's ineffective-assistance-of-counsel claim fails both prongs of the *Strickland* test. In this case, trial counsel provided objective, reasonable assistance, and met the "performance test" of *Strickland*, when he effectively assisted petitioner by presenting petitioner's defense. Counsel vigorously represented petitioner in preliminary motion practice, at the hearing, and at trial. Trial counsel forcefully cross-examined witnesses, and delivered a strong closing argument on petitioner's behalf. In so doing, counsel did not fall below the constitutional standard of reasonable, objective, effective assistance. Trial counsel did not commit errors so serious as to undermine the proper functioning of the adversarial process, or cause any justifiable fears that the trial could not be relied on as having produced a just result. *See Strickland v. Washington*, 466 U.S. at 686. His representation also passed the "prejudice" test announced in *Strickland*, for the result in petitioner's case would not have been more favorable had counsel adopted a different strategy. This Court, in carrying out the "highly deferential" scrutiny of counsel's performance prescribed by *Strickland*, 466 U.S. at 689, should reject petitioner's claim in its entirety.

30

Indeed, the record establishes that defense counsel exhibited a more than adequate knowledge of criminal law, and advanced plausible theories of defense that were established through legitimate trial tactics. For this reason, the New York courts' rejection of petitioner's motion to vacate his judgment on this basis did not contravene or unreasonably apply *Strickland*'s principles.

Nevertheless, petitioner contends that he was deprived of the effective assistance of counsel. In support of this claim, petitioner contends that counsel failed to advise petitioner of his option to testify as to some of the offenses and to move for a severance of those counts in order to enable petitioner to exercise his right to testify. But petitioner's claims are without merit.

Although failing to advise a defendant regarding his right to take the stand in his own defense constitutes ineffective assistance of counsel, it may not be prejudicial if the testimony the defendant would have given is unpersuasive. *See Rega v. United States*, 263 F.3d 18 (2d Cir. 2001), *cert. denied*, 534 U.S. 1096 (2002). In other words, in order to succeed in his claim of ineffective assistance of counsel due to counsel's failure to give him advise regarding his right to testify, a defendant must show that the result of the proceeding would have been different had he testified. *See Brown v. Artuz*, 124 F.3d 73 (2d Cir. 2002); *Sanders v. Tracy*, 2006 U.S. Dist. Lexis 9825 (SDNY February 15, 2006).

31

Moreover, although a defendant has the right to testify in his own defense, the right does not guarantee the defendant a right to testify only to information favorable to his defense. *See Rock v. Arkansas*, 483 U.S. 44 (1987) (a defendant who chooses to testify is subject to cross-examination); *United States v. Alosa*, 14 F.3d 693, 696 (1st Cir. 1994) (although the Fifth Amendment protects a defendant's right to choose whether to testify, it "does not assure that the testimony will only benefit the defendant"). And where a defendant complains that the joinder of counts in a single prosecution unduly affects his choice to testify, before a severance is granted, the defendant "must show that he has important testimony to give on some counts and a strong need to refrain from testifying on those he wants severed." *See United States v. Nolan*, 700 F.2d 479, 483 (9th Cir. 1983); *see also United States v. Werner*, 620 F.2d 922, 930 (2d Cir. 1980).

Here, petitioner's proposed testimony as to the January 2nd offenses fails to demonstrate that he had important testimony to give as to the January 2nd offenses and a strong need to refrain from testifying on the other counts. Petitioner claims that had severance been granted, he would have testified that he and the co-defendant were friends and that he was addicted to heroin. Petitioner states that he would have also testified that on January 2nd he went with the co-defendant because the co-defendant was going to sell an emerald that petitioner had brought from Pakistan. Petitioner states that he would have testified that he did not know that the co-defendant was

32

going to engage in a drug sale.  Petitioner further states that he would have testified that he greeted the undercover officer with a hug because that is how people from Pakistan greet someone who has been introduced as a friend.  Further, petitioner states that he would have testified that contrary to Lieutenant Savino's testimony, he was not counting money in the passenger seat of the car after the co-defendant had engaged in the drug sale.  Petitioner states that he would have testified that he though that the sale of the emerald was unsuccessful.  (Petition at 21-23; Petitioner's Affidavit).

But petitioner's testimony cannot be considered "important" because it serves no other purpose than to deny the police testimony and challenge their credibility.  *See United States v. Fenton*, 367 F.3d 14, 22 (1st Cir. 2004) (holding that a bald assertion of innocence and unparticularized claim as to witness credibility was not specific enough to mandate severance); *United States v. Alexander*, 135 F.3d 470, 477 (7th Cir. 1998) (requiring specific examples of the exculpatory testimony the defendant would give).  Thus, petitioner has failed to demonstrate that he had important testimony to give as to the January 2nd offenses.

Second, petitioner has also failed to establish that he had a strong need to refrain from testifying as to the other counts.  Petitioner claims that because of the numerous taped conversations between the undercover officer and him, the state's proof was stronger as to the remaining counts on the indictment and, therefore, he had a strong reason to refrain from testifying as to those counts (Petitioner's

33

Memorandum of Law at 23).  Petitioner's "strong" reason is, in effect, a need not to be cross-examined about the taped conversations.  But, even if the January 2nd offenses had been severed from the remaining counts, petitioner nevertheless would have been subject to cross-examination as to the remaining counts.  *See United States v. Ballis*, 28 F.3d 1399 (5th Cir. 1994) (even if the bank fraud counts and the obstruction of justice counts had been severed, evidence of the obstruction of justice offenses would have been admissible in the trial of the back fraud offenses to establish consciousness of guilt); *United States v. Alosa*, (1st Cir. 1994) (defendant was charged with closely related offenses of drug trafficking, conspiracy, and use of a firearm, therefore, his testimony denying the use of the firearm in connection with the trafficking charge would have subjected him to cross-examination on the drug trafficking offenses and helped the government prove the conspiracy offense); *Oliveria v. Phillips*, 2007 U.S. Dist. Ct.  LEXIS 74118 (S.D.N.Y. 2007) (petitioner's Fifth and Sixth Amendments rights were not violated by the joinder of two homicide counts in one indictment because petitioner's proposed testimony as to one homicide count would have opened the door to cross-examination about the other homicide).  Here, although there were two separate conspiracies, because of the overlap of the participants, some of the time periods, and the manner of the operation, the prosecutor would have a legitimate basis to cross-examine petitioner as to the remaining counts.  Moreover, as noted by the state court, when the jury learned of petitioner's

34

involvement in the subsequent events involving the co-defendant, petitioner would have appeared "devious and deceitful" to the jury.

Additionally, that petitioner did not have a "strong" reason to refrain from testifying as to the remaining counts is demonstrated by petitioner's own arguments made in his application for leave to appeal the state court's denial of his section 440.10 motion to the Appellate Division. Indeed, in arguing that the state court's determination – that petitioner was not prejudiced by counsel's failure to advise or move for a severance – was wrong, petitioner demonstrates that he was more than capable of offering innocent explanation for his involvement in the subsequent transactions, thereby negating any claim that he had a "strong" reason to refrain from testifying. In that regard, petitioner argued that had he been cross-examined as to the other offenses, he would have simply testified that he was unaware that the co-defendant had sold narcotics on January 2nd and that petitioner's subsequent acts were done at the co-defendant's insistence and because he needed financial assistance from the co-defendant (Petitioner's Leave Application at ¶ 58). Further, petitioner argued that even if he had been questioned about the recordings, the jury nevertheless would have found that petitioner was not a criminal because he appeared inexperienced and "kept deferring to Khan" in the recordings (Petitioner's Leave Application at ¶¶ 58-59). Thus, not only has petitioner failed to establish that he had a strong need to refrain from testifying as to the other counts of the indictment

35

to warrant a severance of the January 2nd offenses from the others, but petitioner has also established that he was also capable of offering explanations for his conduct on those other offenses.

Accordingly, the state court's rejection of the ineffective assistance of counsel claim, based on petitioner's claim that his trial counsel failed to advise or move to for a severance of the January 2nd offense from the others did not contravene or unreasonably apply *Strickland*.  Indeed, contrary to petitioner's claim, trial counsel's failure did not result in the violation of petitioner's right to testify because petitioner has failed to establish that he had important evidence to give as to the January 2nd offenses and a strong need to refrain from testifying as to the remaining offenses.  Thus, petitioner was not prejudiced by trial counsel's failure to advise or move for a severance.  Accordingly, a writ should not issue.

In sum, the New York courts did not contravene or unreasonably apply Supreme Court law in rejecting petitioner's remaining ineffectiveness contentions on the merits and ruling that counsel effectively assisted his client.  It is clear that defense counsel made a valiant effort in the face of strong proof of guilt. Accordingly, a writ should not issue on this basis.

## POINT THREE

**SINCE PETITIONER HAS NOT ESTABLISHED THAT THE STATE COURT'S DETERMINATION THAT HE RECEIVED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WAS CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT PRECEDENT, HE IS NOT ENTITLED TO HABEAS RELIEF ON THIS BASIS (Responding to Ground One of the Petition).**

Although appellate counsel submitted a well-reasoned brief raising and persuasively arguing three promising claims on petitioner's direct appeal, petitioner complains, as he did in state court, that appellate counsel was ineffective because he did not raise two claims. First, petitioner claims that appellate counsel should have claimed that his conviction of the two conspiracy counts violated his double jeopardy rights because the two counts "constituted the same offense." Second, petitioner claims that appellate counsel should have raised an ineffective assistance of trial counsel claim because trial counsel failed to raise a double jeopardy claim. But the state court's rejection of petitioner's ineffective-assistance-of-appellate-counsel claim was in accordance with *Strickland v. Washington*, 466 U.S. 668 (1986) and petitioner is therefore not entitled to federal *habeas corpus* relief on this claim.

As discussed previously (*see* Point Two, *supra*), under the provisions of the AEDPA, a state prisoner's application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court

37

unless that adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). In making this determination, a federal reviewing court should examine 1) the state court's opinion; 2) whether the state court was aware of any procedural bar to review on the merits; and 3) the practice of the state courts under similar circumstances. *Jimenez v. Walker*, 458 F.3d 130 (2d Cir. 2006). Under this test, a claim may be adjudicated on the merits "even if the state court [opinion] does not explicitly refer to either the federal claim or to relevant federal case law." *See Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001). *Accord, Norde v. Keane*, 294 F.3d 401 (2d Cir. 2002); *Eze v. Senkowski*, 321 F.3d 110 (2d Cir. 2003). When the state court is determined to have adjudicated the claim on the merits, a federal habeas court must defer to the state court's decision in the manner prescribed in 28 U.S.C. § 2254(d)(1). In order to be entitled to such deference, the state court need only dispose of the petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. *Aparicio v. Artuz*, 269 F.3d 78 (2d Cir. 2001); *Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

   Here, the Appellate Division's determination that petitioner had failed to establish that he was denied the effective assistance of appellate counsel constitutes

an adjudication on the merits.  Petitioner raised his present ineffective-assistance-of-appellate-counsel claim in a *coram nobis* proceeding in the Appellate Division, Second Department.  The Appellate Division then expressly stated that petitioner "has failed to establish that he was denied the effective assistance of appellate counsel." *People v. Haji*, 22 A.D.3d 599 (2d Dept. 2005).  This was adequate to establish an adjudication on the merits.  *See Aparicio v. Artuz*, 269 F.3d 78; *Sellan v. Kuhlman*, 261 F.3d 303 (state court's one-word denial of *coram nobis* claim was "adjudication on the merits" because petitioner raised federal claim and court decided it on substantive grounds).

And applying the deferential standard to this claim, the state court decision cannot be said to have resulted in a decision that was contrary to, or an unreasonable application of, clearly established Supreme Court law.  When a state prisoner asserts as a ground for federal *habeas corpus* relief that he or she was denied the effective assistance of appellate counsel, a federal court must review appellate counsel's performance according to the two-pronged standard established for reviewing a trial counsel's performance in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Evitts v. Lucy*, 469 U.S. 387 (1985).  This test requires that a petitioner demonstrate first that counsel's performance fell below an objective standard of reasonableness, and, then, that there is a "reasonable probability" that, but for counsel's error, the outcome would have been different.  *Strickland v. Washington*,

39

466 U.S. at 688-94.  As such, in attempting to demonstrate that appellate counsel's performance was deficient based on a failure to raise a claim, a petitioner must demonstrate more than the omission by appellate counsel of a non-frivolous argument; the petitioner must also show but for the failure to raise the argument, there is a reasonable probability that the outcome of the appellate process would have been different.  *See Jameson v. Coughlin*, 22 F.3d 427, 429 (2d Cir.), *cert. denied*, 513 U.S. 888 (1994); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.), *cert. denied*, 513 U.S. 820 (1994); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1993), *cert. denied*, 508 U.S. 912 (1993).  As the Second Circuit has noted, "The *Strickland* standard is rigorous, and the great majority of *habeas* petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

Moreover, an appellate attorney does not have a duty to raise every colorable claim on appeal, and, in fact, can use his or her reasonable discretion to determine which claims represent petitioner's best opportunities for obtaining a reversal of a conviction. *Jones v. Barnes*, 463 U.S. at 751-753.  In *Jones*, the Supreme Court quoted various advocacy texts, and discussed the risk of legal contentions "depreciating through overissue," noting that, "multiplying assignments of error will dilute and weaken a good cause and will not save a bad one."  463 U.S. at 753 (omitting citations).  There is, moreover, a strong presumption that an appellate

40

counsel's decision not to raise particular claims falls within a wide range of reasonable professional conduct. *Holmes v. Bartlett*, 810 F. Supp. 550, 561 (S.D.N.Y. 1993), quoting *Strickland v. Washington*, 466 U.S. at 689.

In this case, petitioner has failed to demonstrate that the state court's rejection of this claim was contrary to, or an unreasonable application of, clearly established Supreme Court law. First, the Appellate Division's decision was not contrary to *Strickland*. Nothing in the state court opinion suggested that that court applied anything other than *Strickland*'s well established standard.

Second, the decision did not unreasonably apply *Strickland*. A review of appellate counsel's brief demonstrates that he advanced petitioner's best appellate issue and winnowed out the weaker arguments. The three-point brief submitted by appellate counsel was persuasive, competent, and wholly adequate in presenting petitioner's strongest claims to the Appellate Division. It effectively summarized the record and presented the trial proceedings in a light favorable to petitioner. Appellate counsel reasonably argued 1) the eavesdropping evidence should have been suppressed because the affidavits in support of the eavesdropping warrants failed to establish that conventional investigative methods would not have been successful; 2) that the trial court violated the mandates of C.P.L. § 270.35 when it permitted his law secretary to speak to an absent juror regarding that juror's incapacity; and 3) that petitioner's sentence was excessive.

41

Overall, counsel's brief contained a rational and competent recitation and analysis of facts, and well-considered and convincing legal arguments which were supported by persuasive legal authority. Consequently, an examination of counsel's brief submitted on petitioner's behalf to the Appellate Division demonstrates that appellate counsel provided petitioner with effective representation.

Nevertheless, petitioner raises challenges to his appellate counsel, but he has failed to rebut the presumption that his attorney was effective. In state court, petitioner merely argued that his appellate counsel should have argued that petitioner's double jeopardy rights were violated and that his trial counsel was ineffective because he failed to raise a double jeopardy claim. But appellate counsel had no constitutional obligation to raise every non-frivolous issue requested by petitioner and he rightfully winnowed out the weaker claims. Moreover, the failure to raise a particular claim does not ordinarily render appellate counsel's representation deficient. *See Cantone, v. Superintendent N.Y. Correctional Facility*, 759 F.2d 207, 218-219 (2d Cir. 1985); *Pendleton v. Scully*, 664 F. Supp. 100, 105 (S.D.N.Y. 1987). Indeed, reasonable professional judgments by petitioner's appellate counsel as to what were petitioner's most promising issues on appeal should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745. Thus, even though other issues might arguably have been raised, their absence alone does not support petitioner's contention that he was deprived of the right to effective assistance of appellate counsel. *Id*.

Indeed, as demonstrated above in Point One, petitioner's claim that his double jeopardy rights were violated is completely without merit and, therefore, appellate counsel cannot be deemed ineffective for failing to raise such a meritless claim.  Here, as fully discussed above, the two conspiracy counts were independent conspiracies: one to sell heroin on January 2, 1997, in Queens; and the other to travel to Pakistan to obtain more heroin to sell at a later date.  Thus, it is evident that appellate counsel's failure to raise these claims did not constitute ineffective assistance, rather, counsel's representation was within the wide range of reasonable professional conduct. *Holmes v. Bartlett*, 810 F. Supp. 550, 561 (S.D.N.Y. 1993), quoting *Strickland v. Washington*, 466 U.S. at 689.

In sum, petitioner's claim that he received the ineffective assistance of appellate counsel does not entitle him to *habeas* relief because petitioner cannot establish that the state court's rejection of this claim was contrary to, or an unreasonable application of, relevant Supreme Court precedent.  Moreover, petitioner cannot show that he was prejudiced by appellate counsel's failure to raise claims that petitioner's double jeopardy rights were violated this claim is without merit.  Accordingly, there is no basis upon which to grant the writ.

## CONCLUSION

For the reasons set forth above, petitioner's petition for a writ of *habeas corpus* should be dismissed, or in the alternative, summarily denied.  Additionally,

43

petitioner has not presented this Court with any issue that would warrant the issuance of a certificate of appealability.  As demonstrated above, some of petitioner's claims are barred from review in this Court and no jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S. 473, 554-55 (2000); *Rhagi v. Artuz*, 309 F.3d 103 (2d Cir. 2002); *see also Eltayib v. United States*, 294 F.3d 397 (2d Cir. 2002).  Moreover, as to the remaining claims, petitioner has not made a substantial showing of a constitutional violation.  Thus, since petitioner's claims would not entitle him to a writ of *habeas corpus* or present the Second Circuit with any debatable questions of federal law, his petition is not worthy of further review.

                                        Respectfully submitted,

                                        RICHARD A. BROWN
                                        District Attorney
                                        Queens County

JOHN M. CASTELLANO
JOHNNETTE TRAILL
USHIR PANDIT
        Assistant District Attorneys
                of Counsel

November 8, 2007